**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

CHURCHILL MORTGAGE CORPORATION

        Plaintiff,

    v.

JEFFREY MILLER,

        Defendant.

Civil Action No. 3:25-cv-00765

Judge Aleta A. Trauger

## PLAINTIFF CHURCHILL MORTGAGE CORPORATION'S RULE 12(B)(6) MOTION TO DISMISS DEFENDANT JEFFREY MILLER'S COUNTERCLAIMS AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Churchill Mortgage Corporation ("Plaintiff" or "Churchill"), by and through undersigned counsel, hereby moves under Federal Rule of Civil Procedure Rule 12(b)(6) for an order dismissing Defendant Jeffrey Miller's ("Defendant" or "Miller") counterclaims (Dkt. 47) for failure to state a claim upon which relief can be granted. In support thereof, Plaintiff states as follows:

### INTRODUCTION & FACTUAL BACKGROUND

Defendant's multiple counterclaims are 3-pages thin, reciting bare bones conclusions lacking any factual teeth to survive a motion to dismiss. Indeed, Defendant's first counterclaim alleging a breach of the severance agreement by failing to adhere to confidentiality commits far worse of a "breach" by airing the severance amount (Counterclaim ¶ 9) – a point which Plaintiff cautiously redacted. To survive a motion to dismiss under Rule 12(b)(6), Miller needed to allege damages stemming from *Churchill's* supposed breach. Miller gave only the conclusory sentence that he "has been damaged as a result of Churchill's breach of the Severance Agreement[.]"

1

Counterclaim ¶ 16. Yet, the only damage that conceivably may have occurred was through Miller's own disclosure. That is not sufficient under Rule 12(b)(6).

Miller's second counterclaim alleging a breach of Miller's employment agreements with Churchill fares no better. The counterclaim refers to two agreements – one entered into in 2022 and one entered into in 2023 and claims that they are "incorporated herein by reference[.]" Counterclaim ¶¶ 18-19. The "agreements" were allegedly breached when Churchill "reduced Miller's contractually agreed compensation and eliminated his recruiting bonus structure." *Id.* ¶ 21. Yet, there is no 2022 or 2023 contractual agreement in the record to be "incorporated by reference," and the counterclaim does not cite a particular provision or describe the terms of the provision that was allegedly breached. *See id.* Under Rule 12(b)(6), this level of pleading is wholly insufficient. Accordingly, dismissal is warranted on both of Defendant's counterclaims.[1]

## ARGUMENT

### I.  RULE 12(B)(6) LEGAL STANDARD

Defendant's counterclaims fail to withstand Rule 12(b)(6). "The legal standard for motions to dismiss counterclaims follows the same standard as other motions to dismiss under Rule 12(b)(6)." *Selby v. Schroeder*, 567 F. Supp. 3d 841, 845 (M.D. Tenn. 2021); *see also Metallic Res., Inc. v. P. Kay Metal, Inc.*, No. 5:24-cv-01909, 2025 WL 1295322, at *1-2 (N.D. Ohio May 5, 2025) (applying Rule 12(b)(6) standard to counterclaims). In ruling on 12(b)(6) motions, the counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The pleading must do more than merely assert bare legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Specifically, the pleading must

---

[1] Plaintiff does not seek dismissal on the portion of the first counterclaim alleging breach of the severance agreement for alleged failure to pay the severance amount afforded in the agreement.

2

contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.*

In assessing Miller's counterclaims, Tennessee law has three required elements to prove breach of contract: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Ethnix Grp., LLC v. Jiminez Distribs., Inc.*, No. 3:24-cv-00184, 2024 WL 3331639, at *2 (M.D. Tenn. July 3, 2024) (citing *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019)).[2] "In the context of a motion to dismiss, the [] pleading must contain either direct or inferential allegations to support each of the material elements necessary to prove the claim." *Nashville Acupuncture Clinic, PLLC v. Holistic Billing Servs., LLC*, No. 3:23-cv-00572, 2023 WL 8851603, at *2 (M.D. Tenn. Dec. 21, 2023) (citations omitted).

Given that Miller's counterclaims rely on breaches of contractual provisions, the general rule is that matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## II. MILLER'S ALLEGED BREACH OF THE SEVERANCE AGREEMENT FAILS

Beginning with Defendant's first counterclaim, breach of the Severance Agreement, the

---

[2] As pled in Plaintiff's Amended Complaint the contract contains Tennessee choice of law provision. Am. Compl. at Ex. C § 8, Ex. A § VI (Dkt. 43). Miller does not articulate what law applies to his counterclaims; however, the Answer and Affirmative defenses both reference Oregon law. The elements of a breach of contract claim are nearly identical under Oregon law "(1) the existence of a contract; (2) the relevant contract terms; (3) that the [claimant] fully performed and did not breach the contract; and (4) that the [opposing party] breached the contract terms resulting in damage to the [claimant]." *Matchniff v. Great Nw. Ins. Co.*, 224 F. Supp. 3d 1119, 1124 (D. Or. 2016) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570, 927 P.2d 1098 (1996)).

3

claim is premised on two breaches: (1) breach of the confidentiality provision and (2) breach of the payment provision. Counterclaim ¶¶ 8, 13. Churchill moves to dismiss only as to the first alleged breach.

In addressing the breach premised on the failure to keep the terms confidential, this argument fails. First, Churchill did not breach the Severance Agreement, because the agreement clearly contemplates that it can be disclosed in order to enforce it, precisely as Churchill has done here. For example, the Agreement expressly acknowledges that there may be "legal action" required "to enforce any provision of this Agreement" and specifies an allocation of attorney's fees. Am. Compl. at Ex. C (Dkt. 43), § 9. In addition, it contemplates the location that "all actions, suits, or other proceedings with respect to this Agreement [will] be brought" and where courts will have personal jurisdiction over "any such action, suit, or proceeding[.]" *id.* § 8. The confidentiality provision must therefore be read in connection with the remainder of the agreement, and not in a vacuum. *Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 432 (6th Cir. 2012) ("Tennessee law requires courts to read all parts of the contract 'together to give meaning to the document as a whole,' in order to construe its plain meaning."). Churchill redacted the only arguably confidential portion of the Severance Agreement—the severance amount—when it filed its amended complaint.[3] Am. Compl. at Ex. C (Dkt. 43), § 2. Therefore, there is no actionable breach of the agreement premised on Churchill's attachment of a redacted version of the Severance Agreement to its original or Amended Complaint.

Second, even if Defendant was correct about his strained interpretation of the confidentiality provision, Defendant has failed to articulate any damages stemming from this purported breach. At best, the pleading states, "Miller has been damaged as a result of Churchill's

---

[3] Churchill did the same when it filed its original complaint.

4

breach of the Severance Agreement," Counterclaim ¶ 16, but that is a formulaic recitation of the damages element, and not any explanation as to causation or the type of damages allegedly suffered. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)) (though the pleading standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). Beyond the severance amount itself,[4] the only purported damages referenced are Defendant's "costs to defend this litigation." Counterclaim ¶ 16. But these defense costs have no plausible connection to the confidentiality provision, and the counterclaim fails to supply any factual allegations showing that they resulted from the filing of the redacted Severance Agreement. Nor can Miller plausibly allege any damages were caused by Churchill's supposed breach rather than his own disclosure. Any damages theory would be entirely self-inflicted, because Miller himself decided to air the severance number on the public docket and directly reference the information that Churchill cautiously redacted. Therefore, even if Miller conjured a discrete damages theory tied to knowledge of the Severance Agreement's provision, he would be unable to articulate any causation to Churchill rather than his own conduct. Accordingly, the Court should dismiss the portion of Miller's first counterclaim alleging breach of the confidentiality provision.

## III. THE COUNTERCLAIM PREMISED ON BREACH OF UNSPECIFIED "EMPLOYMENT AGREEMENTS" DOES NOT WITHSTAND RULE 12(B)(6)

The second breach of contract counterclaim, premised on the failure to pay Miller compensation allegedly owed, also fails under Rule 12(b)(6). It is well established that a complaint that fails to point to a specific contract provision that has been breached falls short of stating a viable breach of contract claim. *Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed.

---

[4] These alleged damages relate to the breach of the payment provision, which is not encompassed by Churchill's motion to dismiss.

5

App'x. 518, 522 (6th Cir. 2012)) ("it is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached") (internal citations omitted). Moreover, "it is insufficient for a claimant to allege generally that a contract was breached without identifying the factual basis for that allegation." *GE Elec. Co. v. S & S Sales Co.*, No. 1:11cv00837, 2011 WL 4369045, at *2 (N.D. Ohio Sept. 19, 2011); *Shaya v. Countrywide Home Loans, Inc.*, No. 10-13878, 2011 WL 1085617, at *6 (E.D. Mich. Mar. 22, 2011), *aff'd*, 489 Fed. App'x. 815, 2012 WL 1816233 (6th Cir. 2012) (complaint failed to "meet the pleading requirements of *Twombly* and *Iqbal*" where it did not identify which provisions of the contract the defendant breached or how the allegations applied to the contract, among other reasons).

Here, Defendant has entirely failed to "point to a specific contractual provision" or provide a factual basis for the breach. The counterclaim does not attach a copy of the alleged contractual agreement breached, nor is it clear what agreement was allegedly breached as there is a reference to both a 2022 and 2023 contract. Counterclaim ¶ 18 ("Churchill and Miller entered into a series of employment agreements, including agreements in 2022 and 2023."). Short of attaching the agreement, Miller did not even provide the relevant contractual language, nor a summary of the payment obligations upon which he purportedly relies, which is necessary for the Court and Plaintiff to be on notice about what exactly was breached and how. Miller vaguely states only that the "employment agreements contained the written terms of Miller's compensation" and that Churchill "unilaterally reduced Miller's contractually agreed compensation and eliminated his recruiting bonus structure." Counterclaim ¶¶ 20, 21. This, purportedly, breached some unspecified "compensation terms." *Id.* ¶ 22. This is similar to the allegations that the Court found insufficient in *Graham*, where the party stated only that the Defendant "violated the parties' collective

6

bargaining agreement by fail[ing] to adhere to grievance procedures, disciplinary standards, and termination protections." *Graham v. Adient US LLC*, No. 25-11471, 2025 WL 1919883, at \*3 (E.D. Mich. July 11, 2025) (alterations in original). In short, just as in *Graham*, Miller "fails to cite any specific contractual provision, provide a copy of the contract, or explain what exactly [Churchill] did that would violate a specific provision of the contract." *Id.* at \*3; *see Northampton*, 492 F. App'x at 522 (affirming dismissal of plaintiff's breach of contract claim; stating that "without the contracts or reference to specific language, [plaintiff] has failed to put forth a plausible claim for relief"). Accordingly, the Rule 12(b)(6) motion should be granted.

## CONCLUSION

For the foregoing reasons, Churchill respectfully requests the Court grant its Motion under Rule 12(b)(6) and dismiss the counterclaims without prejudice.

Dated: January 12, 2026

Respectfully submitted,

*/s/ Lucas A. Markowitz*
Lucas A. Markowitz, Esq. (admitted *pro hac vice*)
Sean Hennessy, Esq. (admitted *pro hac vice*)
Arielle Stephenson (admitted *pro hac vice*)
**MITCHELL SANDLER PLLC**
2020 K Street NW, Suite 760
Washington, DC 20006
Office: (202) 886-5260
lmarkowitz@mitchellsandler.com
shennessy@mitchellsandler.com
astephenson@mitchellsandler.com

Stephen H. Price, TN Bar No. 014658
**JACKSON LEWIS, P.C.**
611 Commerce Street, Suite 2803
Nashville, TN 37203
Office: (615) 565-1161
stephen.price@jacksonlewis.com
***Attorneys for Plaintiff***

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2026, the foregoing Plaintiff Churchill Mortgage Corporation's Motion to Dismiss Defendant Jeffrey Miller's Counterclaims and Memorandum of Law in Support was filed with the Clerk of the Court for the United States District Court for the Middle District of Tennessee using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Lucas A. Markowitz*
Lucas A. Markowitz, Esq.
